J-S21020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL JONES | |
| Appellant | No. 1879 EDA 2014 |

Appeal from the PCRA Order May 29, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007421-2009

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED APRIL 21, 2015**

Appellant Michael Jones appeals from the order of the Philadelphia County Court of Common Pleas dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*.    We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts of this case.  Opinion, 9/24/2014, 2-4, 14-16.   Therefore, we have no reason to restate them.

On April 7, 2010, a jury convicted Appellant of burglary.[1]  On June 23, 2010, the trial court sentenced Appellant to seven to fourteen years' incarceration.  N.T., 6/23/2010, at 23-24.  Appellant filed a post-sentence

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S § 3502.

motion, which the trial court denied on July 23, 2010. On July 26, 2010, Appellant filed a timely notice of appeal. On December 13, 2010, this Court dismissed the appeal for failure to file a brief.

On January 3, 2011, Appellant filed a timely *pro se* PCRA petition requesting reinstatement of his appeal rights. On February 23, 2011, Appellant's counsel filed an amended petition, seeking reinstatement of Appellant's direct appeal rights *nunc pro tunc*. On June 17, 2011, the trial court granted the PCRA petition and reinstated Appellant's direct appeal rights *nunc pro tunc*. On July 13, 2011, Appellant filed a timely notice of appeal. On April 27, 2012, this Court affirmed the judgment of sentence.

On May 10, 2012, Appellant filed a *pro se* PCRA petition. On June 8, 2012 and January 4, 2013, he filed two amended petitions. The trial court appointed counsel. On December 12, 2013, counsel filed a ***Turner/Finley***[2] letter and a motion to withdraw. Counsel filed supplemental ***Turner/Finley*** letters on February 20, 2014 and March 12, 2014. On March 14, 2014, the trial court issued notice of its intent to dismiss Appellant's PCRA petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907. On March 24, 2014, Appellant filed a response. On May 29, 2014, the trial

---

[2] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa.1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super.1988) (*en banc*).

court dismissed the petition.[3] Appellant retained new counsel who filed a timely notice of appeal on June 30, 2014.[4] Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant raises the following issues for our review:

> I. Did the [PCRA court] err and deny Appellant his rights under Article 1 sec. 9 of the Pennsylvania Constitution and the Sixth and Fourteenth Amendments of the U.S. Constitution by finding that pre-trial counsel was not ineffective for failing to request a line up with Ms. Sheerer which resulted in an unduly suggestive in[-]court identification of the Appellant[?]
>
> II. Did the [PCRA court] err and deny Appellant his rights under Article 1 sec. 9 of the Pennsylvania Constitution and the Sixth and Fourteenth Amendments of the U.S. Constitution by finding that counsel was not ineffective for failing to request a **Kloiber**[5] charge[?]

_____

[3] The trial court opinion references a third supplemental **Turner/Finley** letter filed on May 28, 2014. Opinion, 9/24/2014, at 2. The certified record does not contain this document and it is not reflected on the docket.

[4] Thirty days from the date of the May 29, 2014 order was Saturday, June 28, 2014. Because the thirtieth day was a Saturday, Appellant had until Monday, June 30, 2014, to file his notice of appeal. **See** 1 Pa.C.S.A. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

[5] **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa.1954). A **Kloiber** jury charge "instructs the jury that an eyewitness'[s] identification should be viewed with caution where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past." **Commonwealth v. Jones**, 954 A.2d 1194, 1198 (Pa.Super.2008) (quoting _Commonwealth v. Upshur,_ 764 A.2d 69, 77 (Pa.Super.2000)).

III. Did the [PCRA court] err and deny Appellant his rights under Article 1 sec. 9 of the Pennsylvania Constitution and the Sixth and Fourteenth Amendments of the U.S. Constitution by finding that counsel was not ineffective for failing to timely object to the Commonwealth's failure to disclosure prior to the suppression hearing their 'surprise' witness, Jennifer Malloy[?]

IV. Did the [PCRA court] err and deny Appellant his rights under Article 1 sec. 9 of the Pennsylvania Constitution and the Sixth and Fourteenth Amendments of the U.S. Constitution by finding that counsel was not ineffective for failing to challenge the inherently suggestive 'show up' identification made by Jennifer Malloy while in the presence of her boyfriend, Christopher Sheerer[?]

V. Did the P.C.R.A. Court err and deny Appellant his rights under Article 1 sec. 9 of the Pennsylvania Constitution and the Sixth and Fourteenth Amendments of the U.S. Constitution by finding that counsel was not ineffective for making an improper closing argument which prompted the [c]ourt to prejudicially correct counsel in front of the jury[?]

VI. Did the P.C.R.A. Court err and deny Appellant his rights under Article 1 sec. 9 of the Pennsylvania Constitution and the Sixth and Fourteenth Amendments of the U.S. Constitution by finding that counsel was not ineffective for failing to submit written argument to the trial court related to cross racial identification[?]

[VII]. Did P.C.R.A. Counsel, David Rudenstein[,] violate Appellant's Sixth and Fourteenth Amendment rights by ineffectively failing to preserve and argue a claim that sentencing counsel, Jeffrey Azzarano, was constitutionally ineffective for failing to object to the use of an inaccurate offense gravity score to sentence the Appellant[?]

Appellant's Brief at 3-4.

Our standard of review from the denial of post-conviction relief "is limited to examining whether the court's determination is supported by the evidence of record and whether it is free of legal error." ***Commonwealth v.***

*Ousley*, 21 A.3d 1238 (Pa.Super.2011) (citing *Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa.1997)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Glenn B. Bronson, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, dated September 24, 2014, at 4-18) (finding: (1) counsel not ineffective for failing to challenge Alberta Sheerer's in-court identification of Appellant where identification flowed from independent observations Ms. Sheerer made five days prior to preliminary hearing, where she had clear view of Appellant's face when he used force to enter her neighbor's house, where Ms. Sheerer positively identified Appellant and was confident in identification, and where there was no reasonable probability outcome of trial would have been different if counsel had requested lineup because Officer Berry and Ms. Malloy also identified Appellant; (2) counsel not ineffective for failing to request *Kloiber* instructions where: Ms. Sheerer had unobstructed view of Appellant in her neighbor's yard for two to three minutes from approximately 100 feet away while sun was out, she had opportunity to view Appellant before he entered house and while he fled, including two times when she was able to view his face, she identified Appellant at preliminary hearing, and was "a hundred percent sure" of her identification; Ms. Malloy had ample opportunity to view Appellant as he moved around and exited her neighbor's house, and she

- 5 -

identified him shortly after incident, at preliminary hearing, and at trial; and Officer Berry saw Appellant attempting to open sliding glass door, while he was approximately five feet away with unobstructed view, recognized Appellant shortly after he fled as he watched Appellant attempt to hide under car, and identified Appellant at preliminary hearing and trial; (3) Appellant not prejudiced by counsel's failure to object to Ms. Malloy's testimony where counsel fully tested legality of Ms. Malloy's identification, evidence established identification was lawful, Appellant had ample opportunity to investigate because trial was several days after hearing, counsel had significant opportunity to question Ms. Malloy at motions hearing, and two other witnesses identified Appellant; (4) counsel not ineffective for failing to challenge "show up" identification by Ms. Malloy because counsel did, in fact, challenge it by supplementing omnibus pretrial motion; (5) counsel not ineffective due to closing argument statements because, although counsel made objectionable statements during closing arguments, court properly sustained objections and provided appropriate directions, court did not demean counsel or Appellant, and objectionable arguments did not prejudice Appellant; (6) counsel not ineffective for failing to submit argument related to cross-racial identification because, at time of trial, expert testimony on eyewitness identification was inadmissible; (7) claim of counsel ineffectiveness for failure to object to offense gravity score waived because Appellant did not raise it before trial court and is frivolous because the court found Appellant's offense gravity score was 7, not 9, as

claimed in statement of errors complained of on appeal[6]).[7]  Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Judgment Entered.

[signature]

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2015

_____

[6] Appellant maintains that, based on the sentence imposed, the trial court must have used an offense gravity score of 9, which has a standard range of 60 to 72 months' incarceration, not an offense gravity score of 7, which has a standard range of 35 to 45 months' incarceration.  Appellant's Brief at 35-37.  At the sentencing hearing, the court noted the offense gravity score was 7 and noted the sentencing guidelines range was 35 to 45 months plus or minus 6 months.  N.T., 6/23/2010, at 4.  The court then reviewed the aggravating and mitigating factors and departed from the guidelines range when it imposed a sentence of 7 to 14 years' incarceration.  *Id.* at 20-24.  Because the trial court noted the correct guidelines, departed from those guidelines, and provided reasons for its departure, trial counsel is not ineffective for failing to object to the offense gravity score.

[7] In his 1925(b) statement, Appellant also claims PCRA counsel was ineffective for "abandoning, without any analysis or discussion in his *Finley* letter, three of the above meritorious issues which were raised in Appellant's *pro se* PCRA petition."  Appellant's Concise Statement of Matters Complained of on Appeal, dated July 28, 2014, at ¶ VII.  Appellant waived this claim because he did not include it in his statement of questions presented or argument sections of his appellate brief.  Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

FILED
SEP 24 2014
Post Trial Unit

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

    v.

MICHAEL JONES

CP-51-CR-0007421-2009



CP-51-CR-0007421-2009 Comm. v. Jones, Michael
Opinion

7202914491

OPINION

BRONSON, J.                                                      September 24, 2014

On April 7, 2010, following a jury trial before this Court, defendant Michael Jones was convicted of first-degree burglary (18 Pa.C.S. § 3502). On June 23, 2010, the Court imposed a sentence of seven to fourteen years incarceration in state prison. The Court denied defendant's post-sentence motions on July 23, 2010. On July 26, 2010, defendant filed a timely notice of appeal. On December 13, 2010, defendant's appeal was dismissed for failure to file a brief.

On January 3, 2011, defendant filed a *pro se* petition under the Post-Conviction Relief Act ("PCRA"), requesting reinstatement of his appellate rights. Defendant subsequently retained counsel, who filed an amended PCRA petition on February 23, 2011. On June 17, 2011, defendant's PCRA petition was granted, and his appellate rights were reinstated *nunc pro tunc*. Defendant filed a timely Notice of Appeal on July 13, 2011. The Pennsylvania Superior Court affirmed defendant's sentence on April 27, 2012.

Defendant subsequently filed a second, pro se PCRA petition on May 10, 2012, as well as two amended petitions. Counsel for defendant, David S. Rudenstein, was appointed on May 13, 2013. On December 12, 2013, pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988), Mr. Rudenstein filed a letter stating there was no merit to defendant's

claims for collateral relief. Mr. Rudenstein subsequently filed supplemental *Finley* letters on February 21, 2014, and March 13, 2014. On March 14, 2014, the Court issued notice pursuant to Pa.R.Crim.P. 907 ("907 Notice") of its intent to dismiss defendant's claims without an evidentiary hearing. Defendant filed a response to the 907 Notice on April 25, 2014. Mr. Rudenstein filed a final supplemental *Finley* letter on May 28, 2014. The Court dismissed defendant's second PCRA petition on May 29, 2014.

Defendant has now appealed from the Court's dismissal of his second PCRA petition on the grounds that: 1) pre-trial counsel was ineffective for failing to request a line up for witness Alberta Sheerer; 2) trial counsel was ineffective for failing to request a *Kloiber* charge; 3) trial counsel was ineffective for failing to timely object to the Commonwealth's failure to disclose Jennifer Malloy as a witness prior to the suppression hearing; 4) trial counsel was ineffective for failing to challenge defendant's "show up" identification made by Jennifer Malloy; 5) trial counsel was ineffective for making an improper closing argument, prompting the Court to prejudicially correct counsel in front of the jury; 6) trial counsel was ineffective for failing to submit a written argument citing case law relating to cross racial identification; 7) PCRA counsel, David Rudenstein, was ineffective for failing to address three of the above claims raised in defendant's pro se PCRA petition; and 8) PCRA counsel was ineffective for failing to preserve and argue a claim that sentencing counsel, Jeffrey Azarano, was ineffective for failing to object to the use of an inaccurate offense gravity score. *See* Statement of Errors Complained of on Appeal ("Statement of Errors") at ¶¶ I-VIII. For the reasons set forth below, defendant's claims are without merit.

## I. FACTUAL BACKGROUND

At trial, the Commonwealth presented the testimony of Philadelphia Police Officer Anthony Berry, Michael McGeehan, Alberta Scheerer, Jennifer Malloy, Detective Andrew

2

Danks, and James Ryan. Defendant presented the testimony of Takisha Miller and Timothy Hoppes. Viewed in the light most favorable to the Commonwealth as the verdict winner, their testimony established the following.

On May 29, 2009, Alberta Scheerer was at her home, located directly behind 4413 McMenamy Street in Philadelphia. N.T. 4/6/2010 at 48, 71. At approximately 10 a.m., Ms. Scheerer looked out of her upstairs bedroom window and noticed defendant, whom she did not recognize, standing in the backyard of her neighbor, Michael McGeehan. N.T. 4/6/2010 at 29, 49-50. Ms. Scheerer continued to watch defendant through the window, and a couple of minutes later, defendant went to the side of 4413 McMenamy Street, forced open one of the windows, and climbed inside the house. N.T. 4/6/2010 at 32, 51-52.

Ms. Scheerer then ran down the stairs inside her home and alerted her son, Christopher Scheerer, and her son's fiancée, Jennifer Malloy, to what she had witnessed. N.T. 4/6/2010 at 53-54. Ms. Malloy went upstairs with Ms. Scheerer, while Mr. Scheerer ran outside to see if he could flag down a police officer. N.T. 4/6/2010 at 54. Ms. Malloy and Ms. Scheerer watched through the window as defendant walked around the interior of their neighbor's home. N.T. 4/6/2010 at 54-55. Outside, Mr. Scheerer located a police officer and brought him to 4413 McMenamy Street. N.T. 4/5/2010 at 41-42. As Philadelphia Police Officer Anthony Berry approached, he saw defendant trying to break a sliding glass door to get out of the home. N.T. 4/5/2010 at 44; 4/6/2010 at 73.

Defendant ran out the back door of the home, jumped over the fence, and ran in the opposite direction from the Scheerer home. N.T. 4/6/2010 at 55-56. Officer Berry returned to his patrol car and circled the block, locating defendant approximately ten seconds later walking northbound up McMenamy Street. N.T. 4/5/2010 at 48, 81. Officer Berry pulled his patrol car over and asked defendant if he could talk to him. N.T. 4/5/2010 at 48-49.

3

Defendant ran, with Officer Berry pursuing him first in his patrol car and then on foot. N.T. 4/5/2010 at 49. Officer Berry chased defendant through an apartment complex and over a fence before defendant finally hid underneath an abandoned car. N.T. 4/5/2010 at 49-51. Officer Berry drew his weapon, at which point defendant surrendered. N.T. 4/5/2010 at 51.

Another police officer transported Ms. Malloy, accompanied by Mr. Scheerer, to identify defendant. From the backseat of the officer's patrol car, while defendant stood in the street, Ms. Malloy positively identified defendant as the man she saw burglarizing her neighbor's home. 4/5/2010 at 61-62. Based on Officer Berry and Ms. Malloy's identifications, defendant was arrested. N.T. 4/5/2010 at 87-88.

Mr. McGeehan arrived home shortly after being notified of the burglary. N.T. 4/6/2010 at 31. He told police that a duffel bag typically filled with gym equipment and kept in his bedroom had been moved next to the back door. N.T. 4/6/2010 at 32-34, 91. Inside the duffel bag was a five-gallon water jug in which Mr. McGeehan kept between twelve hundred to fifteen hundred dollars' worth of loose change. N.T. 4/6/2010 at 33-37.

## II. DISCUSSION

If court-appointed counsel for a PCRA petitioner determines that the issues the petitioner raises for collateral review are meritless, and the PCRA court concurs, counsel may withdraw and the petitioner may proceed *pro se*, by privately retained counsel, or not at all. *Finley*, 550 A.2d at 218. To be permitted to withdraw, petitioner's counsel must file a no-merit letter, or "*Finley* letter," detailing the nature and extent of counsel's review and listing each issue the petitioner wished to raise, with counsel's explanation as to why the issues are meritless. *Commonwealth v. Pitts*, 981 A.2d 875, 876 (Pa. 2009) (quoting *Finley*, 550 A.2d at 215). After reviewing a *Finley* letter, the PCRA court is required to independently review the record to evaluate the petitioner's claims. *Id.* A PCRA petition may be dismissed without a

4

hearing if the Court determines that there are no claims of arguable merit and no purpose would be served by further proceedings. *Commonwealth v. Lignons*, 971 A.2d 1125, 1143 (Pa. 2009); *see* Pa.R.Crim.P. 907(1).

In his *pro se* PCRA petition, defendant claimed that he was entitled to collateral relief on the following grounds: 1) pre-trial counsel was ineffective for failing to request a line up for witness Alberta Sheerer; 2) trial counsel was ineffective for failing to request a *Kloiber* charge; 3) trial counsel was ineffective for failing to timely object to the Commonwealth's failure to disclose Jennifer Malloy as a witness prior to the suppression hearing; 4) trial counsel was ineffective for failing to challenge defendant's show up identification made by Jennifer Malloy; 5) trial counsel was ineffective for making an improper closing argument, prompting the Court to prejudicially correct counsel in front of the jury; and 6) trial counsel was ineffective for failing to submit a written argument citing case law relating to cross racial identification. PCRA Petition at pp. 3-5. Defendant raised additional claims in a *pro se* amended PCRA petition filed on June 8, 2012, claiming that he was entitled to collateral relief on the following grounds: 7) pre-trial counsel was ineffective for failing to request a hearing to "ascertain whether or not the Prosecutor's misstatement were [*sic*] in fact intentional;" 8) trial counsel was ineffective for failing to inform defendant that defendant's motion *in limine* to exclude defendant's prior burglary conviction had been granted and that defendant would have testified had he known; and 9) trial counsel was ineffective for failing to request this Court recuse itself. *See* Amended Petition to P.C.R.A. Claims at 2. Defendant then raised an additional three claims on January 1, 2013, wherein defendant claimed that he was entitled to collateral relief on the following grounds: 10) trial counsel was ineffective for failing to follow up and ascertain whether "prosecutor's misstatement of procedure were in fact intentional as to this Sight Arrest;" 11) trial counsel was ineffective for failing to

5

communicate with defendant regarding trial strategy; and 12) trial counsel was ineffective for not disputing the contradictory stories between the Commonwealth trial witnesses. *See* Amended Petition Additional Issues at 2-3. Finally, defendant raised one additional issue in his 907 Response, alleging that 13) defendant was actually innocent and that trial counsel was ineffective for failing to preserve a claim of actual innocence on appeal. *See* Defendant's Notice of Objection to Intent to Dismiss Post Conviction Relief Act Petition at 2.

In his *Finley* Letter, and in his three Supplemental *Finley* Letters, Mr. Rudenstein stated his opinion that defendant's claims had no arguable merit. After an independent review of the record, the Court agreed with Mr. Rudenstein.

All of defendant's appellate claims are premised upon his contention that he received ineffective assistance of counsel. Under Pennsylvania law, counsel is presumed to be effective and the burden to prove otherwise lies with the petitioner. *Commonwealth v. Basemore*, 744 A.2d 717, 728 (Pa. 2000), n.10 (citing *Commonwealth v. Copenhefer*, 719 A.2d 242, 250 (Pa. 1998)). To obtain collateral relief based on the ineffective assistance of counsel, a petitioner must show that counsel's representation fell below accepted standards of advocacy and that as a result thereof, the petitioner was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In Pennsylvania, the *Strickland* standard is interpreted as requiring proof that: (1) the claim underlying the ineffectiveness claim had arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. *Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009); *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987). To satisfy the third prong of the test, the petitioner must prove that, but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Sneed*, 899 A.2d 1067, 1084 (Pa. 2006) (citing *Strickland*, 466 U.S. at 694). If the PCRA court determines that any one of the

6

three prongs cannot be met, then the court need not hold an evidentiary hearing as such a hearing would serve no purpose. *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008), *appeal denied*, 956 A.2d 433 (Pa. 2008).

### A. Failure to Request Lineup Identification

Defendant first claims that pre-trial counsel was ineffective for failing to request a lineup identification by witness Alberta Sheerer. Statement of Errors at ¶ I. This claim is without merit.

First, the absence of a pre-trial lineup did not render Ms. Sheerer's identifications of defendant at the preliminary hearing and trial to be unlawful. A criminal defendant does not have a constitutional right to a lineup. *Commonwealth v. Lark*, 462 A.2d 1329, 1335 (Pa. Super. 1983). The circumstances of a one-to-one identification made at a preliminary hearing are obviously suggestive. Nevertheless, where, as here, a witness first makes an identification of a defendant at a preliminary hearing, proof at trial of the identification made at the preliminary hearing, as well as an in-court identification at trial by that witness, will not necessarily violate defendant's due process rights. *Commonwealth v. Steffy*, 399 A.2d 690, 693 (Pa. Super. 1979) (sustaining admission of an identification made at a preliminary hearing and a subsequent in-court identification at trial where the first confrontation was at the preliminary hearing). The test is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Steffy*, 399 A.2d at 693, *quoting Neil v. Biggers*, 409 U.S. 188, 199 (1972). "The fact that the confrontation was on a one-to-one basis in a courtroom setting is not in itself sufficient to reason to exclude the evidence." *Steffy*, 399 A.2d at 693; *accord, Commonwealth v. Davis*, 439 A.2d 195, 198 (Pa. Super. 1981).

7

A court must examine the totality of the circumstances to determine if the in-court identification "flows independently from the witness' observations at the time of the crime and not from the unduly suggestive pre-trial confrontation." *Steffy*, 399 A.2d at 694. These circumstances include "the opportunity of the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of the witness'[s] prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. at 199-200. "Of these factors, the opportunity of the witness to observe the defendant at the time of the incident is considered to be the most important." *Davis*, 439 A.2d at 198.

Here, the totality of the circumstances clearly demonstrates that Ms. Sheerer's in court identification of defendant flowed from the independent observations which she made only five days prior to the preliminary hearing. At the preliminary hearing, Ms. Scheerer testified that on the morning of May 29, 2009, she witnessed defendant stand in her neighbor's yard, then force his way into her neighbor's home. N.T. 6/4/09 at 19. Ms. Scheerer positively identified defendant as the individual who broke into her neighbor's home only five days earlier. N.T. 6/4/09 at 20. As defendant stood in the yard, Ms. Scheerer had a clear look at defendant's face. N.T. 6/4/09 at 23, 26, 28. Ms. Scheerer, therefore, had a clear view of defendant as he committed the crime, was recalling it shortly afterwards, and was confident in her identification. Accordingly, the record establishes that Ms. Scheerer's identification of defendant was reliable, and therefore, her identification testimony did not violate defendant's due process rights.

Moreover, the record establishes that even if counsel had requested a lineup, and had that request been granted, there is not a reasonable probability that the outcome of the trial would have been different. Because Ms. Scheerer's identification was highly reliable, it is

8

unlikely that she would have failed to make an identification at a lineup. Moreover, in addition to Ms. Sheerer's identification, defendant was also identified as the perpetrator at trial by Officer Berry, who arrested defendant only moments after viewing defendant inside McGeehan's home. N.T. 4/5/10 at 45-52. Finally, defendant was identified by Malloy via an in person show up identification moments after defendant was apprehended as well as at trial. N.T. 4/6/10 at 73, 77. Accordingly, the record establishes that counsel's failure to request a line up did not deprive defendant of effective assistance of counsel as defendant cannot show that he was prejudiced by the lack of a line up identification by Ms. Sheerer.

### B. Failure to Request Kloiber Charge

Defendant next claims that trial counsel was ineffective for not requesting that the Court give the jury a *Kloiber* charge. Statement of Errors at ¶ II. This claim is without merit.

A *Kloiber* charge instructs the jury to receive a witness's identification of a perpetrator with caution where the eyewitness: 1) did not have an opportunity to clearly view the perpetrator; 2) equivocated on the identification of the perpetrator; or 3) had a problem making an identification in the past. *Commonwealth v. Kloiber*, 106 A.2d 820, 826-27 (Pa. 1954), *cert. denied*, 348 U.S. 875 (1954); *see Commonwealth v. Rios*, 920 A.2d 790, 804 (Pa. 2007). A *Kloiber* charge is not appropriate where an eyewitness's identification of the defendant was always positive and the opportunity for the witness to observe the defendant was good. *Kloiber*, 106 A.2d at 826; *Commonwealth v. Upshur*, 764 A.2d 69, 77 (Pa. Super. 2000). Here, a *Kloiber* charge was clearly not warranted. While defendant did not specify for which witness trial counsel should have requested a *Kloiber* charge, all witnesses clearly viewed defendant, were unequivocal in their identification, and never had past issues in their identification.

9

Alberta Sheerer was the first individual to see defendant standing in the backyard of McGeehan's home at approximately 10:00 in the morning. N.T. 4/6/10 at 49. Ms. Sheerer watched defendant for approximately two or three minutes from approximately 100 feet away while the sun was out and nothing was obstructing her view. N.T. 4/1/10 at 22; 4/6/10 at 50. Throughout the incident, Ms. Sheerer had an opportunity to view defendant before he entered the house, while he was in the house, and as he fled the house, including two times where defendant was facing her and she was able to view his face. N.T. 4/6/10 at 51, 54-56. Ms. Sheerer further identified defendant at the preliminary hearing on June 4, 2009, at a motions hearing on April 1, 2010, and again at trial, where she stated that she was "a hundred percent sure" defendant was the individual she saw entering McGeehan's home. N.T. 6/4/09 at 20; 4/1/10 at 16, 23; 4/6/10 at 57-58. As Ms. Sheerer clearly viewed defendant, unequivocally indentified him, and did not have past issues in her identification, trial counsel could not err by failing to request a *Kloiber* challenge.

Similar to Ms. Sheerer, Malloy had ample opportunity to view defendant as he moved around the house and eventually exited. N.T. 4/6/10 at 73-75. Shortly following defendant's apprehension by police, Malloy was transported to the location where defendant was being detained and identified defendant as the individual she had seen inside McGeehan's home. N.T. 4/6/10 at 77. Like Ms. Sheerer, Malloy positively identified defendant at the April 1 motions hearing and again at trial. N.T. 4/1/10 at 35; 4/6/10 at 73. As Malloy clearly viewed defendant, unequivocally indentified him, and did not have past issues in her identification, trial counsel could not err by failing to request a *Kloiber* charge.

Officer Anthony Berry, similarly, had sufficient time to view defendant and subsequently identify him. When Berry first approached McGeehan's home, he viewed defendant attempting to open a sliding glass door. N.T. 4/5/10 at 44. At the time Berry made

10

these observations, he was approximately five feet away from defendant with nothing obscuring his view. N.T. 4/5/10 at 45. While Berry lost sight of defendant after he fled the house through the back door, Berry testified that he saw defendant approximately ten seconds later as defendant walked down McMenamy Street. N.T. 4/5/10 at 48. Berry then chased defendant as he attempted to flee and watched as defendant attempted to hide under an abandoned car. N.T. 4/5/10 at 49-50. Upon apprehending defendant, Berry recognized him as the individual he had seen in McGeehan's home. N.T. 4/5/10 at 52. Officer Berry again identified defendant at the April 1, 2010 motions hearing and finally at trial. N.T. 4/1/10 at 60; 4/5/10 at 44. As Berry clearly viewed defendant, unequivocally indentified him, and did not have past issues in his identification, trial counsel could not err by failing to request a *Kloiber* challenge.

Accordingly, there was no basis for trial counsel to request a *Kloiber* instruction regarding the witnesses' identifications of the defendant. Counsel's failure to do so, therefore, did not deprive defendant of effective assistance of counsel.

### C. Failure to Object to Witness Jennifer Malloy

Defendant next claims that trial counsel was ineffective for failing to object to the Commonwealth's failure to disclose Jennifer Malloy as a witness prior to the suppression hearing held on April 1, 2010. Statement of Errors at ¶ III. This claim is without merit. While the failure to disclose an eyewitness may be a discovery violation, *see* Pa.R.Crim.P. 573(B)(2)(a) (specifying names and addresses of eyewitnesses as disclosure discretionary with the Court), defendant cannot demonstrate that he was prejudiced by trial counsel's failure to specifically object to the Commonwealth's failure to disclose.

At the motions hearing on April 1, 2010, defendant moved to suppress the identification testimony of all three eye witnesses, including Malloy. The Commonwealth

11

presented the testimony of Sheerer, Malloy, and Berry. At this hearing, Malloy testified regarding her observations of defendant as he moved inside McGeehan's home and eventually fled. N.T. 4/1/10 at 35-36. Malloy further testified of the process in which she was transported to the scene of defendant's apprehension for a prompt, on-scene show up identification where at she identified defendant as the individual whom she saw inside the home. N.T. 4/1/10 at 36. For an unknown reason, Malloy's name and information were never taken by police, or otherwise recorded in any of the discovery information that would be provided to defendant prior to his trial. N.T. 4/1/10 at 38, 74-75. Following Malloy's direct testimony, trial counsel conducted a lengthy and comprehensive cross-examination. At the conclusion of the hearing, the Court denied defendant's motion to suppress. N.T. 4/1/10 at 112.

The record demonstrates that the outcome of the trial could not have been different if counsel had objected to Malloy as a surprise witness at the suppression hearing. The record of the suppression hearing shows that counsel fully tested the legality of the identification made by Malloy, just as he did with the other witnesses. The evidence at that hearing unequivocally established that the identifications were lawful. Defendant had ample opportunity to investigate further before the trial commenced several days after the hearing. This is not a case where the Commonwealth surprised defendant at trial with a new witness who identified him at the scene of the crime. Counsel had significant opportunity to question Malloy at the motions hearing prior to trial and again at trial. In addition, two other witnesses identified defendant as the individual who was present in McGeehan's home and who fled the scene. Counsel, therefore, was not ineffective for failing to object to the testimony of Malloy based on surprise.

12

### D. *Failure to Challenge Suggestive Identification of Witness Jennifer Malloy*

Defendant next claims that trial counsel was ineffective for failing to challenge the show up identification made by Jennifer Malloy as inherently suggestive. Statement of Errors at ¶ IV. This claim is frivolous, since the record shows that trial counsel actually did challenge the show up identifications made by Malloy. Upon learning of Malloy, trial counsel supplemented his original Omnibus Pretrial Motion ("Omnibus Motion") of February 1, 2010, which challenged, among other items, an alleged suggestive show up identification made by witness Alberta Sheerer. N.T. 3/26/10 at 17; Omnibus Motion at ¶¶ 21, 24-39. Trial counsel stated that his grounds for objecting to Malloy were for the "same reasons that [he] moved to exclude Ms. Sheerer's identification." N.T. 3/26/10 at 17. At the suppression hearing, trial counsel again relied upon the Omnibus Motion, seeking the suppression of all identifying testimony. N.T. 4/1/10 at 4-5. Trial counsel further clarified that he was seeking to suppress Malloy's identification on the grounds that defendant was stopped without probable cause, that the show up identification was fruit of this unlawful stop, and that the procedure for the show up identification was unnecessarily suggestive. N.T. 4/1/10 at 12. While Malloy's name was not used in either the Omnibus Motion or while trial counsel stated his grounds at the beginning of the suppression hearing, it was clear that the only show up identification made was by Malloy.[1] The Court specifically denied trial counsel's motion to suppress the alleged suggestive show up identification. N.T. 4/1/10 at 111-112. Moreover, the trial court's finding that Malloy's identifications were lawful was upheld by the Superior Court on direct appeal. *See* Superior Court Opinion, filed April 27, 2012, at pp. 6-8.

---

[1] Although the Omnibus Motion purported to challenge a show up identification by Ms. Sheerer, the record is clear that Ms. Sheerer never made a show up identification, and that it was Malloy's show up identification that was at issue.

13

## E.   *Presenting Improper Closing Argument*

Defendant next submits that trial counsel was ineffective for making improper closing arguments which prompted the Court to prejudicially correct counsel before the jury. Statement of Errors at ¶ V.  This claim is without merit.

It is true that trial counsel made some objectionable statements during his closing arguments, as happens in most trials. After the Commonwealth objected to these arguments, the Court properly sustained the objections and gave appropriate directions to counsel. At no time did the Court demean counsel or the defendant.  Accordingly, there is absolutely no reason to believe that defense counsel's objectionable arguments in any way prejudiced the defendant.

The Commonwealth first objected to trial counsel's statements regarding defendant's negative feelings about home invasions, although defendant had not testified and that was not part of the evidence in the case:

> **Mr. Connelly:** No one should feel their home was invaded and violated, their safety put at issue.  Mr. Jones agrees with the Commonwealth on that point.
>
> **Mr. Hepburn:** Objection
>
> **The Court:** Sustained.
>
> **Mr. Connelly:** Can I ask for a basis?
>
> **The Court:** Basis is you are referring to what Mr. Jones does or does not agree with. Okay?
>
> **Mr. Connelly:** Okay.
>
> **The Court:** This is argument, not to state what Mr. Jones would or would not say.  He didn't testify.

14

N.T. 4/7/10 at 10.[2]

The Court next interjected when trial counsel improperly stated his personal belief regarding the credibility of witnesses:

**Mr. Connelly:** Plus, her story that this person was wearing a black leather coat and a black leather cap was verified by Ms. Malloy, who also testified, and I saw no reason not to believe Ms. Malloy.

**The Court:** Sir, refrain from saying which witnesses you believe. That's improper argument. You may say what the evidence shows, and refrain from saying what witnesses you personally believe.

You can continue your argument.

I'm sure you know that's not proper argument in a criminal jury trial.

You may continue, without stating your personal belief in the credibility of the witnesses.

**Mr. Connelly:** Thank you. Thank you. I will rephrase that.

N.T. 4/7/10 at 12.

The Court next sustained an objection when defense counsel incorrectly advised the jury that they could ask for a tape measure that counsel had used during the trial, but that was not in evidence:

**Mr. Connelly:** If you ask for this tape measure, the judge, I think, will give it to you.

**Mr. Hepburn:** Objection.

**The Court:** Sustained. Is that in evidence?

**Mr. Connelly:** No.

**The Court:** All right. Don't tell the jury that I will give them something that's not in evidence. All right? Thank you.

N.T. 4/7/10 at 21.

---

[2] Importantly, the Court clearly instructed the jury that defendant had an absolute right not to testify and that the jury was prohibited from drawing any inference adverse to the defendant from his decision not to testify in this case. N.T. 4/7/10 at 61.

15

Finally, the Court sustained an objection when counsel made reference to individual juror's backgrounds that he had learned during the jury selection process:

> **Mr. Connelly:** But the judge is going to talk to you about reasonable doubt, and I know we have a couple lawyers, at least one lawyer on the panel, and I think it's a good thing, because lawyers are used to dealing with what we call the burden of proof—
>
> **Mr. Hepburn:** Objection.
>
> **The Court:** Do not make comments to specific people on the jury or their background. You may continue your argument.

N.T. 4/7/10 at 23.

Certainly, trial counsel could have been more eloquent and avoided the mistakes he made in his closing arguments. However, the objections made above, and the corrections made by the Court, could not have, in any manner, affected the outcome of the trial. This is particularly true given the overwhelming evidence of defendant's guilt presented at trial and described in detail above.

As defendant cannot demonstrate that he was prejudiced by trial counsel's errors in closing argument, defendant's ineffective assistance of counsel claims premised upon those arguments should be rejected.

F.      *Failure to Submit Written Argument Relating to Cross Racial Identification*

Defendant next submits that trial counsel was ineffective for failing to submit written argument to the Court relating to cross-racial identification. Statement of Errors at ¶ VI. This claim is without merit.

Historically, Pennsylvania maintained a strict bar against the admission of expert testimony relating to eyewitness identification. *See, e.g., Commonwealth v. Spence*, 627 A.2d 1176 (Pa. 1993). The Pennsylvania Supreme Court only recently overturned this *per se* exclusionary rule in *Commonwealth v. Walker*, 92 A.3d 766 (Pa. 2014). However, at the time

16

of defendant's trial, the *per se* ban against expert testimony relating to eyewitness identification remained in place. Thus, at the time of defendant's trial, such testimony was prohibited and counsel could not be ineffective for failing to submit written argument relating to cross-racial identification.

G.   *PCRA Counsel's Ineffectiveness for Failure to Address Issues*

Defendant next claims that PCRA counsel, David Rudenstein, was ineffective for failing to address "three of the above meritorious issues" in counsel's *Finley* letter. Statement of Errors at ¶ VII.

Because defendant does not state which of the three claims raised in his Statement of Errors Rudenstein failed to review, this claim is waived. *see, e.g., Commonwealth v. Bond,* 630 A.2d 1281, 1282 (Pa. Super. 1993) (where a PCRA petitioner makes a vague and generalized argument of ineffectiveness that leaves the PCRA court to guess at his claims, those claims are deemed to have been waived).[3]

H. *PCRA Counsel's Ineffectiveness for Failure to Preserve Sentencing Counsel's Ineffectiveness*

Defendant's final claim is that PCRA counsel was ineffective for failing to raise a claim of sentencing counsel's ineffectiveness for failure to object to an incorrect offense gravity score for the burglary charge. Statement of Errors at ¶ VIII. Defendant is raising this alleged ineffectiveness of sentencing counsel for the first time on appeal. His claim is therefore waived. *See* Pa.R.A.P. 302(a); *Commonwealth v. Stevenson,* 894 A.2d 759, 766 (Pa. Super. 2006), *appeal denied,* 917 A.2d 946 (Pa. 2007) ("any issue not raised in the lower court is waived and cannot be raised for the first time on appeal.").

---

[3] The Court notes, however, that each of the claims raised by defendant in his Statement of Errors, with the exception of the claims pertaining to Mr. Rudenstein's ineffectiveness, were addressed in Mr. Rudenstein's initial *Finley* letter filed on December 12, 2013.

17

In any event, this claim is frivolous. At sentencing, the Court determined defendant's offense gravity score as seven, contrary to defendant's claim in his Statement of Errors. N.T. 6/23/10 at 4. Of course, sentencing counsel could not be ineffective for failing to object to a correct offense gravity score determination and PCRA counsel could not be ineffective for not raising a frivolous claim.

## III. CONCLUSION

For all of the foregoing reasons, the Court's order dismissing Defendant's PCRA petition should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.

18

Commonwealth v. Michael Jones
Type of Order: 1925(a) Opinion

CP-51-CR-0007421-2009

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P.114:

**Defense Counsel/Party:**

      Teri Himebaugh
      2201 Pennsylvania Ave. #513
      Philadelphia, PA 19130

Type of Service:     ( ) Personal (X) First Class Mail ( ) Other, please specify:

**District Attorney(s):**

      Hugh J. Burns, Jr., Esquire
      Chief, Appeals Unit
      Philadelphia District Attorney's Office
      Three South Penn Square
      Philadelphia, PA 19107

Type of Service     () Personal (X) First Class Mail ( ) Other, please specify:

**Additional Counsel/Party:**

      Joseph D. Seletyn, Esquire
      Prothonotary
      Office of the Prothonotary – Superior Court
      530 Walnut Street, Suite 315
      Philadelphia, PA 19106

Type of Service:     ( ) Personal (X) First Class Mail ( ) Other, please specify:

**Dated: September 24, 2014**

Jonathon M. Frisby
Law Clerk to Hon. Glenn B. Bronson